UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOHN J. CARNEY, in his capacity as COURT-APPOINTED RECEIVER for HIGHVIEW POINT PARTNERS, LLC, et al.,<br>    Plaintiff,<br><br>    v.<br><br>JAVIER MARIN, et al.,<br>    Defendants. | No. 3:12-cv-00181 (SRU) |

## RULING ON MOTION TO DISMISS

This case is ancillary to a U.S. Securities and Exchange Commission ("SEC") enforcement proceeding against Francisco Illarramendi ("Illarramendi") for violation of federal securities laws. The United States District Court for the District of Connecticut created a receivership estate and appointed John J. Carney (the "Receiver") as receiver.[1] In this action, the Receiver filed a complaint against Merica Consulting, Inc. ("Merica Consulting"), a company allegedly owned, controlled, and dominated by Luis Lugo ("Lugo," and collectively with Merica Consulting, "defendants"), to recover property for the benefit of the receivership estate. The Receiver alleges that Illarramendi used stolen investor money to finance for his friend, Javier Marin ("Marin"), a buyout of Lugo's interest in Hispanic News Press LLC ("HNP LLC").

---

[1] The receivership entities include: Highview Point Partners; MK Master Investments LP; MK Investments, Ltd.; MK Oil Ventures LLC; the MK Group; Michael Kenwood Capital Management, LLC; Michael Kenwood Asset Management, LLC; MK Energy and Infrastructure, LLC; MKEI Solar, LP; MK Automotive, LLC; MK Technology, LLC; Michael Kenwood Consulting, LLC; MK International Advisory Services, LLC; MKG–Atlantic Investment, LLC; Michael Kenwood Nuclear Energy, LLC; MyTcart, LLC; TUOL, LLC; MK Capital Merger Sub, LLC; MK Special Opportunity Fund; MK Venezuela, Ltd.; and Short Term Liquidity Fund, I, Ltd.

Defendants move to dismiss the complaint, alleging inadequate service of process, lack of personal jurisdiction, and lack of standing to bring claims under the Connecticut Uniform Fraudulent Transfer Act ("CUFTA").  Further, defendants argue that the Receiver's claims are time-barred and that the Receiver's common law claims are insufficiently pled.  For the reasons stated below, defendants' motion to dismiss (doc. # 61) is granted in part and denied in part.

**I.      Standard of Review**

   A.  Lack of Personal Jurisdiction Under Rule 12(b)(2)

On a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the plaintiff bears the burden of establishing that the court has jurisdiction over the defendant. *See Thomas v. Ashcroft*, 470 F.3d 491, 495 (2d Cir. 2006). A plaintiff may initially carry this burden "by pleading in good faith . . . legally sufficient allegations of jurisdiction, i.e., by making a 'prima facie showing' of jurisdiction." *Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 184 (2d Cir. 1998) (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)). A plaintiff can make this showing through his "own affidavits and supporting materials," *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981), containing "an averment of facts that, if credited . . . , would suffice to establish jurisdiction over the defendant." *Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996) (quoting *Ball*, 902 F.2d 194, 197 (2d Cir. 1990)).

In resolving the personal jurisdiction issue, a court must "construe the pleadings and affidavits in the light most favorable to [the plaintiff], resolving all doubts in his favor." *A.I. Trade Finance, Inc. v. Petra Bank*, 989 F.2d 76, 79-80 (2d Cir. 1993). When deciding a motion to dismiss for lack of personal jurisdiction, the court may consider affidavits and other evidence submitted by the parties. *Ensign-Bickford Co. v. ICI Explosives USA, Inc.*, 817 F. Supp. 1018,

1026 (D. Conn. 1993) ("[T]he plaintiff must make a 'prima facie showing' through affidavits or other evidence that the defendant's conduct was sufficient for the court to exercise personal jurisdiction.").

   B. Service of Process Under Rule 12(b)(5)

"Under Rule 12(b)(5), a party may file a motion to dismiss due to insufficiency of service of process." *Rzayeva v. United States*, 492 F. Supp. 2d 60, 74 (D. Conn. 2007) (citing Fed. R. Civ. P. 12(b)(5); *Greene v. Wright*, 389 F. Supp. 2d 416, 426 n.2 (D. Conn. 2005)). "A motion to dismiss pursuant to Rule 12(b)(5) must be granted if the plaintiff fails to serve a copy of the summons and complaint on the defendants pursuant to Rule 4 of the Federal Rules, which sets forth the federal requirements for service." *Id.* (citing *Cole v. Aetna Life & Cas.*, 70 F. Supp. 2d 106, 110 (D. Conn. 1999)). "Once validity of service has been challenged, it becomes the plaintiff's burden to prove that service of process was adequate." *Id.* (internal quotation marks omitted).

   C. Failure to State a Claim Under Rule 12(b)(6)

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) is designed "merely to assess the legal feasibility of a complaint, not to assay the weight of evidence which might be offered in support thereof." *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir. 1984) (quoting *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980)).

When deciding a motion to dismiss pursuant to Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true, draw all reasonable inferences in favor of the plaintiffs, and decide whether it is plausible that plaintiffs have a valid claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007);

*Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996).

Under *Twombly*, "[f]actual allegations must be enough to raise a right to relief above the speculative level," and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face." 550 U.S. at 555, 570; *see also Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). The plausibility standard set forth in *Twombly* and *Iqbal* obligates the plaintiff to "provide the grounds of his entitlement to relief" through more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (quotation marks omitted). *Plausibility* at the pleading stage is nonetheless distinct from *probability*, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claims] is improbable, and . . . recovery is very remote and unlikely." *Id*. at 556 (quotation marks omitted).

## II.   Background[2]

Lugo and Marin co-founded and were part owners of HNP LLC through their companies, Merica Consulting and Hispanic News Press Inc., respectively. HNP LLC owned the largest circulation Spanish-language newspaper in New England, *El Planeta*, as well as other enterprises in Latin America.[3] In 2007, Lugo and Marin parted ways. Marin agreed to pay Lugo more than $500,000 for his share of HNP LLC and, after failing to raise the proceeds to finance his buyout of Lugo, turned to Illarramendi for support. Illarramendi, through the receivership entities,

---

[2] All background information is taken from the First Amended Complaint, unless otherwise noted.

[3] The Receiver alleges that Marin, Lugo's business partner, was a long-time friend and confidant of Illarramendi. Marin often relied on Illarramendi for financial support and Illarramendi relied on Marin as a source of information on the Venezuelan financial community and for public relations in order to help further his scheme. Furthermore, the Receiver alleges that Illarramendi asked Marin to recruit new investors and arrange transactions for the

transferred money to Merica Consulting to purchase Lugo's share of HNP LLC.[4]  The Receiver alleges that Illarramendi used approximately $533,300 in stolen investor assets to finance the buyout and that the transfers represent receivership property and improperly benefited the defendants, who did not provide reasonably equivalent value to the receivership entities or their investors in return.

These events occurred in connection with Illarramendi's attempts to cover up a massive trading loss, which began as early as October 2005.  With the complicity of his associates, Illarramendi embarked on an elaborate scheme to hide the "hole" between the real assets held by the funds containing investor monies entrusted to Highview Point Partners, LLP ("HVP Partners") and the liabilities owed as a result of trying to conceal losses.[5]  The scheme involved the use of offshore entities and bank accounts and a complex web of often poorly or falsely documented transfers, loans, and transactions with numerous persons.  When the entire scheme was revealed, the "hole" amounted to more than $300 million.  On March 7, 2011, the United States Attorney for the District of Connecticut filed an information against Illarramendi, charging him with wire fraud, securities fraud, investment adviser fraud, and conspiracy to obstruct justice.  Illarramendi pled guilty and acknowledged as part of that plea that he had engaged in a scheme to hide from investors and creditors losses he had incurred in a failed transaction and that he had used money provided by new investors to the HVP Funds to pay out returns he promised to old investors.  He also admitted to disregarding corporate formalities and

---

receivership entities.
    [4] The transfers included: $60,000 from the Naproad Account; $237,200 from the HPA Account; $36,000 in receivership assets transferred by MK Consulting; and $200,000 from the HPA Account.  *See* Am. Compl. at ¶ 59.
    [5] The scheme is recounted in greater detail in three related cases.  *See Carney v. Lopez, et al.*, 933 F. Supp. 2d 365 (D. Conn. 2013); *Carney v. Montes*, 2014 WL 671263 (D. Conn. Feb. 21, 2014); *Carney v. Beracha, et al.*, 2014 WL 533727 (D. Conn. Feb. 10, 2014).

commingling investments in various HVP funds. On June 14, 2011, the SEC began a civil enforcement action against Illarramendi and others, alleging that they misappropriated investor assets in violation of securities laws. The SEC also sought an order freezing the assets of those defendants and the appointment of a Receiver over those assets. In 2011, U.S. District Court Judge Janet B. Arterton appointed John J. Carney as Receiver over those assets.

## III. Discussion

The Receiver's complaint contains eight counts: Counts One through Three allege statutory fraudulent transfer claims; Count Four alleges subsequent transferee liability against Lugo; Count Five alleges unjust enrichment; Count Six requests the imposition of a constructive trust with respect to the transfers from receivership entities to defendants; Count Seven requests an accounting of transfers from receivership entities; and Count Eight requests piercing of Merica Consulting's corporate veil to impose liability for fraudulent transfers and unjust enrichment upon Lugo. Defendants move to dismiss the complaint for improper service of process, lack of personal jurisdiction, and lack of standing to bring its CUFTA claims.[6] Further, defendants argue that the Receiver's claims are time-barred and that he has insufficiently pled his non-statutory claims.

### A. Federal Receivership Statutes & Personal Jurisdiction

The Receiver asserts that this court has personal jurisdiction over the defendants pursuant to 28 U.S.C. §§ 754 and 1692. Defendants argue that the federal receivership statutes do not provide personal jurisdiction over them because the Receiver has failed to comply with section 754's procedural requirements.

---

[6] The Receiver effected service of process on Merica Consulting subsequent to defendants' filing of this motion to dismiss (doc. # 79). Accordingly, the motion to dismiss for improper service of process is moot.

Section 754 of the federal receivership statute provides that, in order to be vested with jurisdiction and control of receivership property, the receiver shall

> [W]ithin ten days after the entry of his order of appointment, file copies of the complaint and such order of appointment in the district court for each district in which property is located. The failure to file such copies in any district shall divest the receiver of jurisdiction and control over all such property in that district.

28 U.S.C. § 754. At the time of the filing of the motion to dismiss, the Receiver had not filed the complaint or the order of appointment in the District of Massachusetts. On March 1, 2013, however, Judge Arterton entered an Amended and Restated Order Appointing Receiver (the "Receiver Order") (*SEC v. Illarramendi, et al.*, 3:11-cv-00078-JBA, doc. 666), and the Receiver Order was filed in the District of Massachusetts on March 6, 2013 (Wang Decl., Ex. 2, doc. 89-2). The question before me now is whether the entry of the Receiver Order gave the Receiver an additional ten days to file a complaint and appointment order.

The Receiver argues that the later filing of an order confirming the entry of the Receiver's appointment suffices, so long as the parties have adequate notice and are not prejudiced, citing *SEC v. Vision Commc'ns, Inc.*, 74 F.3d 287, 291-92 (D.C. Cir. 1996) ("On remand, the court may reappoint the receiver and start the ten-day clock of § 754 ticking once again."), and *SEC v. Equity Serv. Corp.*, 632 F.2d 1092, 1095 (3d Cir. 1980) ("Viewing the purpose of section 754 [to ensure that the receiver not be responsible for property of which he or she has no knowledge], it seems most consistent with that purpose to permit a receiver who has failed to file within the ten-day period to reassume jurisdiction by a later filing, as long as the rights of others have not been prejudiced during the intervening period."). Although I am not required to defer to the decisions of the circuit courts that have accepted this argument, I agree

with them.[7] Notwithstanding defendants' claims that the State of Massachusetts has been prejudiced because it has lost the rights to adjudicate the property in Massachusetts, there is no evidence that Massachusetts has even attempted to exercise those rights. Nor have the defendants have been prejudiced--they were aware of the Receiver's appointment. Accordingly, I hold that the Receiver has complied with Section 754's filing requirements.

    B. <u>Whether the Receiver is a "Creditor" for Purposes of the Fraudulent Transfer Claim</u>

In order to have standing to bring a claim under CUFTA, a claimant must have been a creditor at the time the alleged fraudulent transfer took place. *Chien v. Skystar Bio Pharm. Co.*, 623 F. Supp. 2d 255, 267 (D. Conn. 2009). Defendants argue that the Receiver has failed to state any CUFTA claims because CUFTA allows only creditors to sue. Specifically, defendants argue that only investors are creditors under CUFTA, and the Receiver does not have standing to bring claims on behalf of investors.

In *Scholes v. Lehmann*, 56 F.3d 750 (7th Cir. 1995), the individual perpetuating a Ponzi scheme used corporations he created to transfer funds rightly belonging to those corporations to other entities. A receiver for those corporations brought a fraudulent conveyance action against third parties to recover amounts transferred by the corporations. The *Scholes* Court held that the

---

[7] The defendants' efforts to elucidate the text, purpose, and history of the federal receivership powers embodied in section 754 are appreciated, but unavailing. The defendants' analysis recognizes that at least one purpose of section 754's limitations is to give notice to out-of-state courts and potential litigants that a federal receiver had been appointed in an out-of-state district. Defendants stretch (or limit) the purpose of notice in section 754 to provide that it gives notice that "any future litigation over in-state receivership property would occur within the state" if the complaint and appointment order are not filed within ten days. A simpler, and more plausible reading of the purpose of notice in this provision is that there is a ten-day window in which a state will not be able to exercise jurisdiction over in-state receivership property, but that the state may exercise jurisdiction after that ten-day period *unless* a complaint and appointment order have been filed pursuant to a valid appointment order from the out-of-state district court. The concept of prejudice, quite reasonably, would come into play where a later-filed receivership order threatens to nullify a state's efforts to exercise jurisdiction, or potential out-of-district

receiver had standing to bring the fraudulent transfer claims—even though the corporations he represented were nominally involved in the wrongdoing—and declined to impute the corporation's bad acts to the receiver because to do otherwise would allow the "wrongdoer . . . to profit from his wrong." *Scholes*, 56 F.3d at 754.  Writing for the court, Judge Richard A. Posner reasoned that:

> The appointment of the receiver removed the wrongdoer from the scene.  The corporations were no more [the Ponzi principal's] evil zombies.  Freed from his spell they became entitled to the return of the moneys—for the benefit not of [the Ponzi principal] but of innocent investors—that [the Ponzi principal] had made the corporations divert to unauthorized purposes . . . .  Now that the corporations created and initially controlled by [the Ponzi principal] are controlled by a receiver whose only object is to maximize the value of the corporations for the benefit of their investors and any creditors, we cannot see an objection to the receiver's brining suit to recover corporate assets unlawfully dissipated by [the Ponzi principal].  We cannot see any legal objection and we particularly cannot see any practical objection.

*Id.* at 754-55.  In *Eberhard v. Marcu*, 530 F.3d 122, 132 (2d Cir. 2008), the only Second Circuit case to opine on the applicability of *Scholes*, the receiver represented the assets of an individual who allegedly engaged in fraudulent conveyances.  The Second Circuit held that the receiver lacked standing to bring fraudulent conveyance claims on the individual's behalf because it would allow him to avoid the consequences of his actions.  *Eberhard*, however, relied on *Scholes* and a subsequent Seventh Circuit case, *Troelstrup v. Index Futures Group, Inc.*, 130 F.3d 1274 (7th Cir. 1997), to distinguish between situations in which the receiver seeks to bring claims on behalf of a creditor of a transferor and those in which the receiver brings claims on behalf of a transferor for whom he was not appointed to bring claims.  *See Eberhard*, 530 F.3d at 132-34.  The *Eberhard* Court's denial of standing to the receiver was limited to the second situation—where the receiver seeks to bring claims on behalf of the transferor itself.  Expressly endorsing the Seventh Circuit's analysis in *Scholes*, the *Eberhard* Court held that "a receiver's standing to

---

litigants are unaware of appointment of the receiver.  Neither of those events has happened here.

- 9 -

bring a fraudulent conveyance claim will turn on whether [the receiver] represents the transferor only or also represents a creditor of the transferor." *Id.* at 133. Here, the fraudulent transfer claims are brought on behalf of creditors of receivership entities.

As did the defendant in *Montes*, another Illarramendi-related receivership action brought by the Receiver, the defendants here rely on *Eberhard* to argue that the Receiver can only bring a CUFTA claim to avoid the receivership entities' transfers if the receivership entities are not only debtors, but are creditors as well. *See Montes*, 2014 WL 671263, at *7.

In *Montes*, I held that:

> When transfers are made by corporations that are completely controlled by the wrongdoer, "the transfers were, in essence, coerced." The corporation then becomes the creditor in the coerced transaction and a receiver for the coerced corporation has standing to claw back the transfers. . . . [T]he fraudulent transfer claims are brought on behalf of receivership entities, which are creditors of the transferor, Illarramendi. Accordingly . . . the Receiver has standing to bring claims against [the defendant].

2014 WL 671263, at *8. That reasoning applies here, too. The CUFTA claims are brought on behalf of the receivership entities, which, as creditors of Illarramendi, have standing to bring claims against the defendants. Thus, the Receiver is a "creditor" for purposes of his statutory fraudulent conveyance claims.[8]

C. Count Five: Unjust Enrichment

The Receiver seeks to recover under a theory of unjust enrichment against Lugo for his receipt of money from the Receivership Entities. A plaintiff seeking recovery for unjust enrichment must prove: (1) that the defendants were benefitted, (2) that the defendants unjustly did not pay the plaintiffs for the benefits, and (3) that the failure of payment was to the plaintiff's detriment. *Hartford Whalers Hockey Club v. Uniroyal Goodrich Tire Co.*, 231 Conn. 276, 282-

---

[8] The defendants concede that the complaint states a subsequent transferee claim under Conn. Gen. Stat. § 52-522i(b) against Lugo to the extent it states a CUFTA claim against Merica Consulting. Defs.' Rep. Br. at 19-20 (doc. # 92-1).

83 (1994).

Defendants argue that the Receiver has failed to state a claim for unjust enrichment because the complaint does not allege that the transfers were not a fair value for the ownership interest in HNP LLC that Merica Consulting transferred to Marin. Consequently, defendants argue, even if the defendants benefitted from the transfer, the Receiver has not alleged that they "unjustly did not pay the plaintiffs for any benefits." Defs.' Br. in Supp. of Mot. to Dismiss at 29 (quoting *Town of New Hartford v. Conn. Res. Recovery Authority*, 291 Conn. 433, 452 (Conn. 2009)).

Here, the complaint states that Lugo and Merica Consulting received funds in exchange for a share of HNP LLC. In order to have unjustly benefitted from that exchange, there must be some unjust difference between the benefits given and received. The Receiver has not alleged an unjust difference other than by alleging that Lugo's initial capital contribution to HNP LLC amounted in the "thousands of dollars" and that Lugo, through Merica Consulting, received over $500,000 for his interest in the company. It is unclear whether Lugo's "thousands of dollars" in initial capital contribution (or the current market value at the time of the transaction) was so small in comparison to the $500,000 Lugo received that it amounts to an unjust enrichment. Accordingly, I grant defendants' motion to dismiss the Receiver's claim for unjust enrichment. This claim is dismissed without prejudice to repleading within 30 days.

D. Counts Six: Constructive Trust

The Receiver requests the imposition of a constructive trust with respect to the transfer of funds, assets, or property from receivership entitles as well as to any profits received by the defendants in the past or in the future in connection with the receivership entities.

A constructive trust is a remedy; it does not give rise to an independent substantive cause

of action. *Titan Real Estate Ventures, LLC v. MJCC Realty Ltd. P'ship.*, 415 B.R. 29, 44 (D. Conn. 2009) (citing *Macomber v. Travelers Prop. & Cas. Corp.*, 261 Conn. 620, 623 n.3 (2002)). I may consider the imposition of a constructive trust as a remedy after the Receiver has established the defendants' liability. Thus, I dismiss the claim for a constructive trust and convert it to a request for a remedy.

    E.  Count Seven: Accounting

The Receiver requests an accounting of any transfer of funds, assets, or property received from the receivership entities as well as any past and future profits in connection with the receivership entities. Defendants argue that a request for an accounting is a remedy, not a substantive cause of action, relying on a Connecticut Supreme Court case, *Macomber v. Travelers Prop. & Cas. Corp.*, 261 Conn. 620, 623 n.3 (2002). The Receiver responds that an accounting is a recognized action under Connecticut law and that there is no appellate authority clarifying the *Macomber* footnote. Additionally, the Receiver argues that accounting is a cause of action where "the facts create a reasonable doubt whether adequate relief may be obtained at law." Pl.'s Mem. in Opp'n to Mot. to Dismiss at 22 (citing *Makert v. Elmatco Prods., Inc.*, 84 Conn. App. 456, 460 (2004)). I need not resolve the question whether an accounting is a valid cause of action. As I did with respect to the constructive trust claim, I dismiss the claim for an accounting and convert it to a request for a remedy.

    F.  Statute of Limitations

A court may dismiss on statute of limitations grounds where facts supporting a statute of limitations defense are set forth in papers filed by plaintiff himself. *Walters v. Indus. & Commercial Bank of China*, 651 F.3d 280, 293 (2d Cir. 2011). The original complaint was filed on February 3, 2012 and the first amended complaint was filed on July 20, 2012. Defendants

seek to dismiss all or part of each claim pursuant to statutes of limitations.

The defendants seek to dismiss all but one of the CUFTA claims because they accrued more than four years before this lawsuit was commenced. The Receiver invokes the discovery rule of sections 52-522e(a)(1) and 52-552j of CUFTA and argues that the applicable statute of limitations is one year from the appointment of the Receiver. Under the so-called "discovery rule" of CUFTA section 52-522e(a)(1), an action is timely if brought within one year of the date on which the fraud could reasonably have been discovered by the claimant. *See Epperson v. Entm't Express, Inc.*, 338 F. Supp. 2d 328, 344 (D. Conn. 2004), *aff'd sub nom. Epperson v. Entm't Exp., Inc.*, 159 F. App'x 249 (2d Cir. 2005). The Receiver argues that CUFTA claims were brought on February 3, 2012, within one year of the Receiver's appointment on February 3, 2011. Thus, the Receiver's CUFTA claims, as alleged in Counts One through Four of the complaint, are timely.

The defendants argue that because Illarramendi's knowledge of the alleged transfers is imputed to the receivership entities as of the time they were made, the discovery period applicable to the fraudulent transfer claims is one year after the alleged payments were made. In *Armstrong v. McAlpin*, 699 F.2d 79, 89 (2d Cir. 1983), the Second Circuit held that a receiver's claims were time-barred because the shareholders of a corporation accused of securities fraud, "with reasonable diligence," could have discovered the fraudulent conveyance within the statute of limitations. In this case, however, the Receiver could not have discovered the wrongdoing until he was appointed. And insofar as the corporations were used to carry out the alleged bad acts, the only person in a position to discover the bad acts was a person involved in perpetrating them. The defendants concede that there is no clear authority from Connecticut courts on this issue. I hold that the discovery period renewed upon the appointment of the Receiver and that

the CUFTA claims are timely to the extent they seek arise out of transfers made four years before February 3, 2012.

**V.      Conclusion**

For the reasons stated above, I grant in part and deny the defendants' motion to dismiss. I grant defendants' motion to dismiss Counts V (Unjust Enrichment) without prejudice and convert Counts VI (Constructive Trust) and VII (Accounting) to remedies.  I deny defendants' motion to dismiss Counts I (Actual Fraud (CUFTA § 52-522e(a)(1)), Count II (Constructive Fraud (CUFTA § 52-522e(a)(2)), Count III (Constructive Fraud (CUFTA § 52-522f(a)), and Count IV (Subsequent Transferee Liability (CUFTA § 52-522i(b)).

It is so ordered.

Dated at Bridgeport, Connecticut, this 17th day of March 2014.

/s/ Stefan R. Underhill
Stefan R. Underhill
United States District Judge